IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KELLY J. RUSSELL,

                Plaintiff,                OPINION AND ORDER

v.

                                             20-cv-102-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Kelly J. Russell seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act from her alleged onset date of April 1, 2017, through the date of the ALJ's opinion. The ALJ issued a partially favorable decision, finding that Russell was disabled as of the date of her alleged disability onset date, April 7, 2015, through March 31, 2017, but concluded that in light of her medical improvement, plaintiff was no longer disabled after March 31, 2017. Russell raises two core challenges in this appeal: (1) the ALJ erred by arbitrarily determining that Russell medically improved on April 1, 2017; and (2) the ALJ failed to account for Russell's absences after the alleged improvement. For the reasons that follow, the court rejects both challenges and will affirm plaintiff's partially unfavorable determination.

BACKGROUND[1]

### A. Overview

Plaintiff Russell has at least a high school education, is able to communicate in English, and has past work experience as a guard, store cashier, customer service clerk and receptionist. While Russell has not engaged in substantial gainful activity since April 7, 2015, her alleged disability onset date, she has engaged in work activity, including earning $3,882 in the fourth quarter of 2017.

Russell applied for social security disability benefits on February 22, 2016, and she applied for supplemental security income on February 25, 2016, claiming an alleged disability onset date of April 7, 2015, in both applications. With a birth date of February 27, 1971, Russell was 44 years-old on her alleged disability onset date, which is defined as "younger individual." 20 C.F.R. § 404.1563. Russell claimed disability based on depression and anxiety/panic attacks, herniated disc and broken vertebrae, insomnia, lichens planus/auto-immune disease, seizures and migraines. (AR 263.)

### B. ALJ Decision

ALJ Luke Woltering held a video hearing on October 3, 2018, at which Russell appeared personally and by the same counsel representing her in this appeal. On January 23, 2019, the ALJ issued an opinion finding that Russell was not disabled as of April 1, 2017.

---

[1] The following facts are drawn from the administrative record ("AR"). (Dkt. #15.)

2

More specifically, the ALJ concluded that from the alleged onset date through the date of the hearing, Russell suffered from the following severe impairments: lumbar and thoracic degenerative disc disease with multilevel fracture deformities and herniation at L5-S1; lumbar stenosis and radiculopathy; major motor seizures; bipolar disorder; depression; anxiety; post-traumatic stress disorder; panic disorder; obesity; sleep apnea; and insomnia. (AR 193 (setting forth severe impairments for period from April 7, 2015, through March 31, 2017); AR 200 (concluding that impairments post April 1, 2017, were the same as those present during the earlier period).) In making this determination, the ALJ concluded that a number of other impairments were not severe, but none of these determinations are material to plaintiff's appeal. (AR 193.)

Next, the ALJ considered whether Russell had an impairment or combination of impairments that met or medically equaled one of the listed impairments. Similarly, plaintiff does not challenge the ALJ's finding that she did not meet or medically equal any of the listings.

The ALJ then determined Russell's residual functional capacity ("RFC"). For reasons explained below, the ALJ formulated: (1) an RFC for the period from April 7, 2015, to March 31, 2017; and (2) an RFC for the period April 1, 2017, to the date of the hearing. For the first RFC through March 31, 2017, the ALJ determined that Russell could perform light work with additional exertional restrictions of: "need to alternate every 30 minutes between sitting and standing while remaining at the work station"; "could not climb ladders, ropes, or scaffolds"; and "could occasionally stoop." (AR 195.) The ALJ also included several nonexertional restrictions: "could sustain attention and

3

concentration for simple and multistep tasks"; "could maintain effort for two hour periods over the course of an eight hour work day and standard work week in a setting permissive of some degree of self-pacing"; "could have routine interactions with the general public"; "could participate in typical interactions with coworkers and supervisors"; "could adapt to minor changes in routine"; and "could maintain independent goal directed behavior." (AR 195.) Critically, however, the ALJ concluded that Russell would be "off task more than 12% of the workday," explaining that this addition was necessary because during this earlier period, Russell "was experiencing significant physical pain despite extensive treatment, as well as significant psychological distress." (AR 195, 199.) In light of this addition, and with input from the vocational expert, the ALJ concluded that being off task more than 12% of the workday "would preclude her ability to sustain competitive employment." (AR 199.)

By April 1, 2017, however, the ALJ determined in light of her medical improvement, that Russell no longer would be off-task more than 12% of the workday, and removed that restriction from her otherwise identical RFC. (AR 202.) Unsurprisingly, plaintiff's appeal largely turns on whether ALJ Woltering adequately explained his reasons for finding this medical improvement. Based on both objective findings in the record, as well as Russell's own reports to her treating physicians, the ALJ explained in his decision that plaintiffs' physical and mental health symptoms stabilized and improved after a hospitalization for an overdose on March 9, 2017. (AR 200.) In particular, with respect to physical symptoms, the ALJ pointed to the fact that Russell sought treatment less frequently in 2017 and had not seen her primary care physician ("PCP") at all from January 2017 until

4

September 2017, when she was seen for a cough. While the ALJ acknowledged that Russell had sought pain treatment with her PCP in November 2017, the ALJ found significant that she had "missed several appointments at the pain clinic and could not reestablish care there until the following January." (AR 201.) Moreover, the ALJ noted, the November 2017 visit revealed "normal reflexes, normal strength, normal sensation, and no tenderness to palpation in the lumbar spine, with mild to moderate spasm in the bilateral lumbar paraspinal areas." (*Id.*) At the appointment, Russell further stated that she believed her back pain was due to being on her feet all day long on the job, a requirement that was *not* part of the ALJ's RFC.

The ALJ also pointed to indications on April 2017 of the success of medical "branch blocks" and RFA therapy in controlling her pain for several months at a time.[2] In combination with Russell's missed appointments at the pain clinic following those treatments in 2017, the ALJ inferred, not unreasonably, "that the claimant was satisfied with her pain control, which is inconsistent with her testimony as to the degree of her ongoing physical limitations." (AR 201.) At the same time, the ALJ acknowledged that Russell reported increased pain in December 2017, although on examination, "she exhibited no acute distress," was "without significant antalgic posturing," and was "able to bear weight equally bilaterally." (*Id.*) Indeed, Russell's doctor advised her to consider OTC medication, and scheduled her for another RFA therapy in January 2018, after which she

---

[2] During the hearing, Russell herself acknowledged that radiofrequency ablation ("RFA") therapy in particular would control her pain for four to eight months. (AR 235.)

noted "0 out of 10 pain." (*Id.*) Her doctor also indicated that she could return to work with no restrictions of any kind.

As for her mental health, the ALJ relied on Russell's reports, also in April 2017, that new medication prescribed by her new psychiatrist was "helping quite a bit and her mood was improved." (AR 201.) Not only had Russell exhibited no suicidal ideation, but in December 2017, she reported her mood was "positive" and she was still working. Similarly, in January 2018, she "reported no significant depressed mood or anxiety." (*Id.*) While complaining of difficulty falling asleep by June 2018, Russell was also described in contemporaneous medical notes as "calm, cooperative and very pleasant," and also noted that her depression had "improved significantly" since she had been on Seroquel. (*Id.*) At that time, her mental status examination was normal as well.

In justifying his finding of a material change to Russell's RFC after April 1, 2017, the ALJ further relied on her reported activity level, noting that she is "working fulltime in a job that involves standing for nearly her entire eight-hour shift, and dealing with the public." (AR 202.) While again acknowledging that Russell complained of pain due to working on her feet, the ALJ specifically noted that "her having pain while standing all day is not inconsistent with her residual functional capacity, which allows for a sit-stand option to address her pain." (*Id.*) The ALJ next relied on a March 26, 2018, form completed by Dr. Tian, indicating that Russell could return to work without any restrictions as of January 28, 2018. While the ALJ discounted this opinion somewhat, having concluded that Russell is not "entirely free of any functional limitations," he still found those limitations

"consistent with the fact that the claimant showed medical improvement and has returned to work." (AR 203.)

Finally, the ALJ concluded that Russell's issue with attendance at her current job "in and of itself does not establish that she is unable to perform occupations consistent with her residual functional capacity, as the demands of her current position arguabl[y] exceed the residual functional capacity." (AR 202.)

Having removed the 12% of task restriction from her RFC as of April 1, 2017, the ALJ finally relied on the assistance of the VE's testimony to find that plaintiff could perform past relevant work as a store cashier or, in the alternative, that there were other jobs in significant numbers in the national economy plaintiff could perform, including mail clerk, storage facility rental clerk and sorter. (AR 203-205.) As such, the ALJ held Russell not disabled as of April 1, 2017, through the date of his written decision.[3]

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the

---

[3] Normally the court would describe the key medical records plaintiff identified in her opening brief, but since plaintiff's focus is on medical records from the period during which the ALJ concluded Russell *was* disabled (Pl.'s Opening Br. (dkt. #20) 5-8 (describing records from 2014 through May 2016)), the court will simply discuss medical records where relevant in the opinion below.

Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Plaintiff raises two, core challenges to the Commissioner's final decision: (1) the ALJ erred by arbitrarily determining that Russell medically improved on April 1, 2017; and (2) the ALJ failed to account for Russell's absences after her alleged improvement. The court explains its rejection of each challenge below.

## I. Medical Improvement as of April 1, 2017

Plaintiff contends that the ALJ provided no evidentiary basis to support his finding that Russell would no longer be off-task for 12% of a workday as of April 1, 2017. As described above, however, the ALJ concluded that the 12% off-task restriction was warranted with respect to the earlier period of time in light of the combination and severity of physical and mental health limitations at that time. Having noted improvement as of April 1, 2017, therefore, the ALJ reasoned appropriately that this particular restriction was no longer necessary. Accordingly, the ALJ certainly explained his basis for removing the off-task restriction.

In fairness, plaintiff more specifically challenges whether the ALJ cited substantial evidence supporting a finding of medical improvement, arguing that this finding was flawed and unsupported on a number of grounds. However, on this, too, she is mistaken.

*First*, Russell contends that the ALJ erred in relying on her lack of medical care for most of 2017 as a basis for finding improvement, at least with respect to her back pain, because the ALJ failed to explore whether her lack of appointments with her PCP and failure to attend pain clinic appointments could have been because of insurance issues. However, there is *nothing* in the record to support such an inference. To the contrary, the *only* notes about insurance in the record support a finding that she had insurance during the relevant period, since in 2014, it was her insurance that hampered her ability to access a psychotherapist and receive epidural spinal injections. There certainly are cases requiring an ALJ to explore supposed inconsistencies in the record to confirm inferences drawn from those inconsistencies (Pl.'s Opening Br. (dkt. #20) 14), but other than hinting at a possible insurance issue, plaintiff fails to explain why the ALJ's inference of improvement in her pain was unreasonable in this case. Moreover, plaintiff's own testimony during the hearing supported the ALJ's conclusion that following the RFA ablation in April 2017, plaintiff had several months of substantial pain control. Indeed, Russell acknowledged that the RFA therapy controlled her pain for four to eight months. (AR 235.)

*Second*, plaintiff faults the ALJ for assuming that the RFA therapy in April 2017 resulted in more successful alleviation of her pain than her prior therapies. Again, the record reflects that the therapy *was* more successful, at least until November 2017, at which point she returned to her PCP for pain management. Even at that time, the PCP simply

9

suggested over-the-counter medication, still not finding a basis to prescribe prescription painkillers. Only by January 2018, was Russell approved for another RFA treatment.

*Third*, in addition to relying (reasonably enough) on the medical records indicating the absence of any need to return for pain relief for six months after the April 2017 RFA therapy, the ALJ also noted that plaintiff worked during the second half of 2017 as a bank teller. While plaintiff argues that the ALJ erroneously relied on the bank teller job as a part-time position to find that she could work full-time, there are several flaws with this argument. Plaintiff testified at the hearing that the bank teller job *was* a full-time job. (AR 224.) Moreover, the ALJ also relied on plaintiff's *own* assessment of her new complaints of pain in November 2017 as having been caused by standing all day at her work as a bank teller. Accordingly, the ALJ crafted an RFC that allowed Russell to alternate between standing and sitting, expressly addressing this pain trigger. The court sees no flaws in the ALJ's reasoning.

*Fourth*, plaintiff faults the ALJ for relying on a January 2018 form completed by Dr. Tian, who released her to work without any restrictions. However, not only did the ALJ discount Tian's opinion to the extent that he included no restrictions, but he also concluded from the record as a whole that limiting Russell to light work with additional exertional and nonexertional restrictions was warranted. Moreover, plaintiff fails to explain how the ALJ erred in relying on this report simply to support his finding of improvement as of April 2017 with respect to plaintiff's physical limitations. Plaintiff further contends without any explanation that Dr. Tian could have released her as "it pertained to the ablation procedure." (Pl.'s Opening Br. (dkt. #20) 17.) Not only did Dr. Tian not express

10

this opinion, but this argument makes no sense since the ALJ plainly did not rely on it. Regardless, the court finds no error with the ALJ's reliance on this piece of evidence as supporting his finding of a medical improvement.

*Fifth*, with respect to plaintiff's mental health issues, plaintiff points to a June 2017 medical report that Russell still had trauma dreams, and she quit a new job in August 2017 because the "situation was overwhelming." (*Id.* at 17-18.) While these records support a finding that her mental health symptoms had not completely resolved as of April 1, 2017, they do *not* undermine, nor even call into question, the ALJ's finding of Russell's improvement with new medications in April 2017. Plus, the RFC for the period post-April 1, 2017, still includes a number of non-exertional limits to address her mental health issues.

Having reviewed the record and the ALJ's explanation, the court concludes that the ALJ offered substantial evidence and built a logical bridge between that evidence and his finding of a medical improvement as of April 1, 2017, justifying the change in her RFC and, in turn, the ALJ's finding that Russell was no longer disabled as of that date.

## II. Accounting for Absences

This leaves only plaintiff's contention that the "ALJ failed to account for a key issue in this case -- Russell's noted absences." (Pl.'s Opening Br. (dkt. #20) 20.) As described above, however, the ALJ acknowledged Russell's absentee issues with respect to employment, but concluded she was performing jobs that resulted in absences because they were more demanding than she could sustain, both physically and mentally. Thus, the ALJ reduced the job requirements as part of adjusting her RFC. In other words, by providing exertional restrictions, limiting the amount of time she would be required to stand, the ALJ

limited plaintiff to jobs that would be less likely to create pain and more likely to accommodate her back issues. Similarly, by permitting some breaks in concentration, self-pacing, and limiting her to only minor changes in routine, consistent with the medical findings, the ALJ addressed some of the anxiety that Russell felt about work, which, in turn, would help in addressing absenteeism. Here, too, the court concludes that the ALJ did not ignore the record, but rather relied upon it in formulating an appropriate RFC. As such, the court rejects this basis for remand as well.

ORDER

IT IS ORDERED that:

1) The decision of defendant Andrew Saul, Commissioner of the Social Security Administration, partially denying plaintiff Kelly Russell's application for social security disability benefits is AFFIRMED.

2) The clerk's office is directed to enter judgment in defendant's favor.

Entered this 8th day of February, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge